IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JOHNNY E.,[1]

    Plaintiff,

v.

**NANCY A. BERRYHILL**,
Acting Commissioner of Social Security,

    Defendant.

**Civ. No. 3:18-cv-01271-MC**

**OPINION AND ORDER**

**MCSHANE, Judge**:

    Plaintiff Johnny E. brings this action for judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Title II of the Social Security Act. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

    The issues before this Court are whether the Administrative Law Judge ("ALJ") erred in rejecting: (1) Dr. Scott Alvord's, Psy.D., medical opinion; and (2) Plaintiff's subjective symptom testimony. Because the ALJ erred in discounting both Plaintiff's testimony and Dr. Alvord's medical opinion, the Commissioner's decision is REVERSED and this matter is REMANDED for an award of benefits.

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case and any immediate family members of that party.

1 – OPINION AND ORDER

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff applied for DIB and SSI on September 8, 2014, alleging disability since December 31, 2009 and July 1, 1988. Tr. 205, 212.[2] Both claims were denied initially and upon reconsideration. Tr. 29–30, 59–60. Plaintiff timely requested a hearing before an ALJ and appeared before the Honorable Vadim Mozyrsky on November 18, 2016 and March 9, 2017. Tr. 138, 22–28, 1–21. ALJ Mozyrsky denied Plaintiff's claims by a written decision dated June 16, 2017. Tr. 89–112. Plaintiff sought review from the Appeals Council and was denied on May 17, 2018 rendering the ALJ's decision final. Tr. 113–19. Plaintiff now seeks judicial review of the ALJ's decision.

Plaintiff was 24 years old at the time of his alleged disability onset and 53 at the time of his hearings. *See* tr. 31. Plaintiff completed high school and attended college and worked as a mason and temporary laborer. Tr. 483, 7, 235, 221, 297. Plaintiff alleges disability due to melanoma, bad back, gall bladder removal, and right leg nerve damage. Tr. 31, 45, 61, 77, 234.

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, the court reviews the

---

[2] "Tr." refers to the Transcript of Social Security Administrative Record, ECF No. 9, provided by the Commissioner.

administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989) (citing *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986)). "'If the evidence can reasonably support either affirming or reversing,' the reviewing court 'may not substitute its judgment' for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720–21 (9th Cir. 1996)).

## **DISCUSSION**

The Social Security Administration utilizes a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2012). The burden of proof rests on the claimant for steps one through four, and on the Commissioner for step five. *Bustamante v. Massanari*, 262 F.3d 949, 953–54 (9th Cir. 2001) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). At step five, the Commissioner's burden is to demonstrate that the claimant can make an adjustment to other work existing in significant numbers in the national economy after considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the Commissioner fails to meet this burden, then the claimant is considered disabled. *Id.*

## **I. Dr. Alvord's Medical Opinion**

Dr. Scott Alvord, Psy.D., examined Plaintiff at the request of Disability Determination Services on January 20, 2015. Tr. 101, 481–88. Dr. Alvord found that Plaintiff's overall adaptive functioning was mild to moderately impaired. Tr. 487. Dr. Alvord diagnosed Plaintiff with chronic post-traumatic stress disorder, depressive disorder, and dependent personality traits. *Id.* The ALJ adopted some of Dr. Alvord's opinions regarding Plaintiff's difficulties but rejected his

opinions that Plaintiff would have difficulty interacting with coworkers, maintaining regular workplace attendance, completing a normal workday/workweek, and dealing with typical workplace stress. Tr. 102.

"To reject an uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citation omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* When evaluating conflicting medical opinions, an ALJ need not accept a brief, conclusory, or inadequately supported opinion. *Id.*

Here, Dr. Alvord's opinion is uncontradicted by that of state agency psychological consultants Ben Kessler, Psy.D., and Winifred Ju, Ph.D. *See* tr. 54–56, 72–74 (opining that Plaintiff should not frequently engage with the public, should have structured interaction with coworkers, and would do best in a predictable and infrequently changing environment). Therefore, the ALJ needed to provide clear and convincing reasons supported by substantial evidence to properly reject Dr. Kerner's opinion. *See Bayliss*, 427 F.3d at 1216 (citation omitted). The ALJ failed to do so here.

An ALJ must weigh the following factors when considering medical opinions: (1) whether the source has an examining relationship with claimant; (2) whether the source has a treatment relationship with claimant; (3) supportability (as shown by relevant evidence and explanation); (4) consistency with the record as a whole; (5) specialization; and (6) other factors,

including the source's familiarity with other information in the record. 20 C.F.R. § 404.1527(c)(1)–(6).

The ALJ acknowledged that Dr. Alvord is a psychologist and examined Plaintiff. Tr. 102. The ALJ then focused on supportability and consistency, finding that: (1) Plaintiff's mason and bricklayer work demonstrates that he can maintain regular work attendance, complete a normal workday/workweek, and deal with typical workplace stress; (2) there is no objective medical evidence of record to support Dr. Alvord's opinion that Plaintiff cannot work around coworkers; (3) Dr. Alvord's opinions appear to be based on Plaintiff's subjective complaints, not objective medical evidence; (4) Dr. Alvord did not consider the abilities Plaintiff would have if he pursued consistent medical treatment and took his prescribed medication; and (5) the objective medical evidence of record does not support the severity of Dr. Alvord's opinions. *Id.*

Plaintiff's mason and bricklayer work do not negate Dr. Alvord's findings. In January 2015, Plaintiff told Dr. Alvord that he occasionally did masonry projects on the side but that nothing ever lasted long, and he had not worked for a contractor in a few years. Tr. 483. He earned $245.78 in 2003 and $350.00 in 2005. Tr. 221. He worked full time as a temporary laborer from January to December in 2008 and 2009. Tr. 235. This limited work activity does not undermine Dr. Alvord's opinion that Plaintiff could not sustain work.

Dr. Alvord's expert medical opinion and substantial objective evidence support Dr. Alvord's conclusion that Plaintiff could not work around coworkers. Plaintiff told Dr. Alvord he had irritability and anger issues. Tr. 484. Records revealed that he had been referred to anger management but never received therapy. *Id.* He reported angry outbursts and short temper in January 2014. Tr. 316. He experienced a downward spiral after his surgeries, loss of his father

5 – OPINION AND ORDER

and brother, divorce, and sexual assault (which resulted in hospitalization). Tr. 316, 12. He received some counseling, which was helpful. Tr. 316. He suffered multiple concussions due to college football and boxing. *Id.* He reported poor social support and estrangement from family and close friends due to his reputation as a "hot head." *Id.* He also had a history of getting in fights and was generally discharged from the military. Tr. 5–6.

Additionally, Dr. Kessler and Dr. Ju found that Plaintiff should have structured interactions with coworkers, should not closely engage with the public on a frequent basis, was moderately limited in his ability to respond appropriately to changes in the workplace and set realistic goals or make plans independently of others, had adaptation limitations, and fared best in a predictable environment with infrequent changes. Tr. 56, 73–74. Dr. Ju also found that Plaintiff was moderately limited in his ability to accept instructions and respond appropriately to criticism from supervisors and get along with coworkers or peers. Tr. 73. The ALJ gave moderate weight to Dr. Kessler and Dr. Ju's opinions, discounting their conclusion that Plaintiff needed structured interaction with coworkers. Tr. 102–03.

Defendant argues that Plaintiff's adequate social support and time watching sports and drinking with friends contradicted Dr. Alvord's opinion that Plaintiff would have difficulty interacting with others. Def.'s Br. 7, ECF No. 16 (citing tr. 102); *see* tr. 485. The ALJ did not cite this evidence, however. *See* 102, 485. Generally, issues the Commissioner raises post-hoc may not be used to affirm a finding of no disability. *See, e.g.*, *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) ("We are constrained to review the reasons the ALJ asserts.") (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)). Regardless, "adequate support" and "occasional" time with friends does not necessarily equate to "maintaining friendships." *See*

*Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999) (holding that presenting as engaging and cooperative, being adequately groomed and punctual, and maintaining friendships tends to undermine claims of marked social limitations.). Nor do these facts outweigh the above evidence of record or cast into serious doubt Plaintiff's claim. *See Garrison v. Colvin*, 759 F.3d 995, 1022 (9th Cir. 2014) (finding no serious doubt because the Commissioner failed to "point to anything in the record that the ALJ overlooked and explain how that evidence casts into serious doubt Garrison's claim to be disabled.").

Dr. Alvord's reliance on Plaintiff's subjective complaints was also an improper basis for the ALJ to rely on when discounting Dr. Alvord's medical opinion. Generally, a specific and legitimate reason for rejecting a treating physician's opinion is that the opinion is premised on a claimant's properly discredited subjective complaints. *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989); *Morgan*, 169 F.3d at 602; *Batson*, 359 F.3d at 1195. This rationale may not be appropriate, however, in the psychiatric evaluation context. *See Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) ("Psychiatric evaluations may appear subjective, especially compared to evaluation in other medical fields. Diagnoses will always depend in part on the patient's self-report, as well as on the clinician's observations of the patient. But such is the nature of psychiatry. Thus, the rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness.") (internal citation omitted). Moreover, Dr. Alvord's opinion was not solely based on Plaintiff's subjective complaints. Dr. Alvord also noted that Plaintiff was tearful and demonstrated mild psychiatric distress— shifting in his chair and glancing around the room—indicative of situational anxiety. Tr. 485.

Dr. Alvord considered Plaintiff's treatment, response to treatment, and prognosis with adequate care. Dr. Alvord questioned Plaintiff about his psychiatric history and noted that he was evaluated but non-complaint with therapy, anger management, and medication treatment. Tr. 484. Dr. Alvord said that Plaintiff's prognosis with adequate care was "fair." Tr. 487. Defendant argues that because Plaintiff was non-compliant with mental health treatment, Dr. Alvord's opinion did not indicate Plaintiff's ability to function with consistent treatment. Def.'s Br. 7 (citing tr. 102, 484). Dr. Alvord acknowledged Plaintiff's non-compliance, addressed his prognosis with adequate care, and still concluded that Plaintiff had certain limitations.

Finally, Plaintiff argues that the ALJ failed to identify what medical evidence does not support Dr. Alvord's opinion. Pl's Br. 12. This Court agrees. The ALJ did not point to any evidence in the record in drawing this conclusion. *See* tr. 102.

The ALJ failed to give clear and convincing reasons supported by substantial evidence for giving Dr. Alvord's medical opinion partial weight.

## II. Plaintiff's Credibility

An ALJ must consider a claimant's symptom testimony, including statements regarding pain and workplace limitations. *See* 20 CFR §§ 404.1529(a), 416.929(a). Where there is objective medical evidence in the record of an underlying impairment that could reasonably be expected to produce the pain or symptoms alleged and there is no affirmative evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of her symptoms. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The ALJ is not "required to believe every allegation of disabling pain, or else disability benefits

would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Molina*, 674 F.3d at 1112 (quoting *Fair,* 885 F.2d at 603). The ALJ "may consider a range of factors in assessing credibility." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). These factors can include "ordinary techniques of credibility evaluation," *id.*, as well as:

> (1) whether the claimant engages in daily activities inconsistent with the alleged symptoms; (2) whether the claimant takes medication or undergoes other treatment for the symptoms; (3) whether the claimant fails to follow, without adequate explanation, a prescribed course of treatment; and (4) whether the alleged symptoms are consistent with the medical evidence.

*Lingenfelter,* 504 F.3d at 1040. "If the ALJ's credibility finding is supported by substantial evidence in the record," this Court "may not engage in second-guessing," *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted), and "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation," *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995) (citation omitted).

Here, the ALJ found that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of [his] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." Tr. 99. Plaintiff testified that he was unable to work due to back issues, right leg numbness, severe depression, and post-traumatic stress disorder. Tr. 9–12. His melanoma and gallbladder surgeries impacted his motivation and ability to function, perhaps causing his mental impairments. Tr. 6, 10–11. His father and brother died within four months of each other around the time he contracted melanoma. Tr. 12. He attempted work periodically and did some construction, sometimes full-time, but earned no more than $200 or $250 per week. Tr. 8–9. When he tried to work an eight-hour day his right leg went numb, his back went out, and he felt "schizoid." Tr. 9. He could not be a mason five days per week or eight hours per day even

though it was his goal in life and he wanted to get better. *Id.* He wanted to focus and be a contributing member of society but felt like he was "drowning." Tr. 14. He could not work as a motel linen folder, for example, because he would feel like he "was going backwards in life." *Id.* He could stay focused doing the job depending on how much he was earning but could not stand on his feet for as long as the job would require. *Id.*

Plaintiff said he had not slept three hours straight in years and was fatigued. Tr. 14–15. He had a hard time getting along with others. Tr. 15. His ability to function would prevent him from maintaining competitive employment or working for 30 hours per week. *Id.* His back and testicles were "always sore" and his legs would become numb. *Id.* He may have a different answer after his upcoming hernia surgery, but his doctors told him that his L-3 and L-4 in his lower right back were bone-on-one and caused him pain and numbness. Tr. 16. He wanted to work but could not keep a job or deal with people. Tr. 17. He was homeless, living in his mother's empty tool shed with no heat or electricity. Tr. 16–17.

The ALJ found that the objective medical evidence of record does not support the severity of Plaintiff's alleged physical limitations. Tr. 99. First, the ALJ found that Plaintiff's physical examinations and imaging did not support the severity of his alleged back pain limitations. Tr. 99–100. For example, in November 2010, Plaintiff could climb up and down the examination table without problems and very briskly. Tr. 523. A March 2015 neurological examination revealed lower extremity numbness that did not go down his legs and no acute distress. Tr. 67. An April 2015 examination revealed he was not taking pain medication, his gait, heel, and toe walking were normal, and he had good range of motion in his back. Tr. 535. The ALJ failed to mention, however, that extending his back caused him increased back pain

radiating towards right buttock. Tr. 535. A March 2015 magnetic resonance imaging scan showed that Plaintiff had L1-2 mild canal stenosis, L3-4 mild canal stenosis with slight anterior foraminal narrowing, L4-5 moderate canal stenosis with severe right and moderate left foraminal narrowing, with mild progression since imaging in 2010, and L5-S1 mild anterior canal and lateral narrowing with moderate bilateral foraminal narrowing, with mild progression from previous medical imaging. Tr. 537–38. The ALJ did not acknowledge that Plaintiff's multilevel lumbar disc degeneration and facet arthrosis had mildly progressed since 2010. Tr. 537.

The ALJ also found that Plaintiff declined back surgery. Tr. 100. Plaintiff was referred to back surgery in June 2015 and cancelled the procedure in July. Tr. 68. His July 2015 physical examination revealed inconsistent alleged pain symptoms and referral to a primary care provider. *Id.* In February 2016, Plaintiff deferred surgery in favor of chiropractic medicine and acupuncture. Tr. 600. Given Plaintiff's traumatic experiences with melanoma and gall bladder surgery, his deferral may have been reasonable. *See* tr. 6, 10–11. Moreover, he expressed a desire to resume work and was willing to pursue other treatment modalities. Tr. 600.

Additionally, the ALJ found that Plaintiff worked and performed a "wide variety of activities." Tr. 100. A claimant's daily activities may be grounds for an adverse credibility finding if he "is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (quoting *Fair*, 885 F.2d at 603); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113 (citing *Turner v. Comm'r*

*of Sec. Sec.*, 613 F.3d 1217, 1225 (9th Cir. 2010)). Here, the ALJ found that Plaintiff was "working a lot"—removing concrete and replacing stone—in February 2015 and injured his back. Tr. 502, 514, 67. The ALJ also found that he worked as a mason and was in good general health in March 2015, then continued to work as a mason in March 2017. Tr. 67, 541, 636.

These work-related activities are hardly a "wide variety" of daily pursuits. Further, the ALJ omitted key details from the reports he cited. Plaintiff worked but was generally unemployed in February 2015 and had had problems with his back for years due to construction work. Tr. 502–3. He injured his back removing concrete "at someone's house" in February 2015 and was unable to work. Tr. 514. In March 2015, Plaintiff said he was in good general health "*other than*" his back pain. Tr. 67 (emphasis added). He reported a lot of pain at the end of the day. Tr. 541. As of March 2017, he said he did masonry work, not that he was currently working. Tr. 636. There is no evidence that Plaintiff spent a "substantial part of his day" engaged in masonry or construction work or claimed to have a "totally debilitating" back impairment. *See Orn*, 495 F.3d at 639 (quoting *Fair*, 885 F.2d at 603); *Molina*, 674 F.3d at 1113 (citing *Turner*, 613 F.3d at 1225). Rather, Plaintiff testified that back issues in combination with other impairments rendered him unable to work and that his back went out when he attempted to work. Tr. 9–12. These allegations are supported by the medical evidence of record. Plaintiff's work-related activities are not grounds for an adverse credibility finding.

Regarding Plaintiff's hernia, the ALJ found that Plaintiff did not follow up with treatment, reported that it was not problematic for him, and worked as a mason and bricklayer. Tr. 100 (citing 636, 634). Plaintiff followed up with treatment. He saw the general surgeon he was referred to in January 2018 and planned to have surgery, but his insurance claim was denied.

Tr. 817. Further, the ALJ mischaracterized Plaintiff's March 2017 complaints. Plaintiff said that it had caused him difficulty when working but was not having as much of a problem because he was unemployed. Tr. 636. Indeed, Plaintiff had pain with palpation due to his hernia in November 2010. Tr. 523.

The ALJ also found that a January 2015 examination by Dr. John Ellison, M.D., revealed little evidence to support the severity of Plaintiff's alleged limitations. Tr. 100. Plaintiff reported constant low back pain radiating to his right buttock and thigh, melanoma excision in 1988, and gallbladder removal in 1991. Tr. 479. He also reported that he had good strength and energy, no difficulty getting dressed, bathing, sitting, standing, walking, or going up stairs, was not taking any medications, and worked as a bricklayer 20 hours per week. *Id.* He had normal gait, could walk in tandem on his heels and toes, and had normal motor strength and muscle bulk/tone. Tr. 480. He also had full range of motion in his extremities and no skin rashes or lesions. *Id.* Plaintiff argues that Dr. Ellison did not review any radiographic images. Pl.'s Br. 15, ECF No. 11; *see* tr. 480, 505 (revealing moderate canal stenosis with severe right and moderate left foraminal narrowing and mild canal stenosis at L1-2, L3-4, and L5-S1). Plaintiff's neurologist, on the other hand, considered the images and concluded that Plaintiff had intermittent left leg paresthesias, possibly due to L3-4 stenosis, and right leg "sensation of deadness and foot slap," likely secondary to L4-5 stenosis. Tr. 536.

Finally, the ALJ found that Plaintiff intermittently complained of mental symptoms and few objective medical findings indicated significant functional restrictions. Tr. 101. The ALJ also found that Plaintiff only briefly took medication for his mental symptoms, did not refill his prescription, and failed to follow up with treatment. Tr. 484. The ALJ also found that he "often"

13 – OPINION AND ORDER

drank heavily for 4 or 5 consecutive days, had been told by friends that he is an alcoholic, consumed 5 to 6 alcoholic beverages per day a couple of times per month, and "has used marijuana and other drugs." Tr. 485, 597. This summary is not entirely accurate. Plaintiff was largely non-compliant with treatment. However, he "occasionally" drank for 4 or 5 days then stopped for a couple of weeks, had been to detox before, and had not used marijuana since high school, though he admitted to intermittent cocaine use. Tr. 485, 817.

Additionally, the ALJ found that Dr. Alvord's examination of Plaintiff in January 2015 revealed little evidence to support the severity of Plaintiff's alleged limitations. Tr. 101 (citing tr. 483–84). Plaintiff reported depression, anxiety, and psychosis. Tr. 483. He said he used to be goal-oriented but everything fell apart since he had cancer in 1998. *Id.* However, he was not taking any medication, denied suicidal ideation, and had never been psychiatrically hospitalized. Tr. 484. The ALJ failed to note that Dr. Alvord also said that Plaintiff presented for depression and anxiety, was paranoid, lacked trust, was referred to for anger management, and may have bipolar 2. Tr. 483–85. The ALJ also improperly rejected Dr. Alvord's assessment of significant functional restrictions due to mental health impairments, as discussed above. Tr. 487.

Given the record as a whole, substantial evidence does not exist to support the ALJ's finding that Plaintiff lacks credibility.

### III. The Credit-as-True Doctrine

Because the ALJ erred, the question is whether to remand for further administrative proceedings or an award of benefits. "Generally, when a court of appeals reverses an administrative determination, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Bernecke v. Barnhart*, 379 F.3d 587, 595

(9th Cir. 2004) (internal quotation marks and citations omitted). Under the "credit-as-true" doctrine, however, remand for calculation of benefits is appropriate when:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison*, 759 at 1020. If "the record raises crucial questions as to the extent of [a claimant's] impairment given inconsistences between his testimony and the medical evidence," the issues should be resolved in further proceedings. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1105 (9th Cir. 2014). Because "[t]he touchstone for an award of benefits is the existence of a disability" rather than an ALJ's error, the court must assess whether outstanding issues remain *before* considering whether to credit erroneously rejected evidence as a matter of law. *Brown-Hunter*, 806 F.3d at 495 (citations omitted). Even if all the requirements are met, the court may nevertheless remand "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled" within the meaning of the Act, such as when there are inconsistencies between testimony and the medical record, or if "the government has pointed to evidence in the record that the ALJ overlooked" and explained how that evidence belies disability. *Dominguez v. Colvin*, 808 F.3d 403, 407–08 (9th Cir. 2015) (quoting *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014)) (internal brackets and quotation marks omitted).

Here, Plaintiff satisfies all three requirements. The record is fully developed and there are no ambiguities that further administrative proceedings need resolve. There is no evidence that substance abuse contributed to Plaintiff's mental impairments, nor could it have contributed to his back issues or right leg numbness. *See* Def.'s Br. 9. As explained above, the ALJ failed to

provide sufficient reasons for rejecting Plaintiff's credibility and Dr. Alvord's medical opinions. Credited as true, Plaintiff's allegations and Dr. Alvord's medical opinion, along with the vocational expert's testimony, establish that Plaintiff is disabled under the Act. The vocational expert testified that missing two or more days of work per month due to mental health and pain symptoms or being off task 15% of the time would prevent a person from all employment. Tr. 19–20. Because Dr. Alvord said Plaintiff would have difficulty interacting with coworkers, maintaining regular workplace attendance, completing a normal workday/workweek, and dealing with typical workplace stress and Plaintiff testified that he was unable to work, Plaintiff is disabled under the Act. *See* tr. 487, 9–17. Moreover, consideration of the record as a whole convinces the Court that Plaintiff is disabled. The Court sees no purpose for further proceedings.

## **CONCLUSION**

For these reasons, the Commissioner's final decision is REVERSED and this matter is REMANDED for calculation and award of benefits. Final judgment shall be entered accordingly.

IT IS SO ORDERED.

DATED this 30th day of September, 2019.

s/ Michael J. McShane
Michael J. McShane
United States District Judge
